Good morning, Your Honors. Please proceed, Counsel. May it please the Court, my name is Simon Grill, and I represent plaintiffs and appellants Alexandria Heather and Kelsey Nelson. I'd like to reserve two minutes for rebuttal, please. All right, Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you. As seven other circuit judges have held, the plain meaning of the statutory text resolves this appeal. Plaintiffs are consumers under the Act because they provided their personal information in exchange for a subscription to Healthline's newsletter or a Bezi account. The District Court erred by construing goods or services to mean video-related goods or services for three reasons. First, that interpretation ignores the plain meaning of the statute and impermissibly adds terms. Second, the District Court's reading is inconsistent with core canons of statutory interpretation, including the meaningful variation canon and the surplusage canon. Third, the District Court's interpretation is inconsistent with the purpose and legislative history of the VPPA. So, Counsel, what is the limiting principle? If a consumer includes someone who sells or purchases, rents, procures any goods or services, not just audio-visual goods and services, what's the limit of the defendant's liability? There are several limits, Your Honor. But the first and perhaps most important limit occurs in the definition of personally identifiable information. But there's an issue there, of course. That section says that personally identifying information includes as opposed to saying means. So it could be read to mean that that is not really a limit. It is just part of what includes personally identifying information. So it could be something beyond audio-visual materials. It's true that the definition says that. And the majority in the Sixth Circuit read that to mean that the definition may not be the limiting principle that I'm arguing that it is. But I would argue that that interpretation is wrong because we can look at the legislative history, and the Senate report explains the definition of personally identifiable information and why Congress used the word includes. In that report, the Senate report explains that includes is intended to be expansive. But it also specifically notes the presence of the term video as a limiting factor for liability. I think that's page 8 of the Senate report. So you disagree with the Seventh Circuit, and you disagree with the partial dissent in the Sixth Circuit. Is that right? I disagree with the majority opinion in the Sixth Circuit. I agree with the Seventh Circuit, which held that the plain meaning of the statutory text is that goods are sold. I agree. But it sounds like you're agreeing with the Second Circuit in saying that the personal identifying information, that's the limiting principle. That's where the video request for services or materials comes in. Is that right? I would agree with the Second Circuit that the personally identifiable information is a limiting factor in terms of liability. But Judge Easterbrook's decision in the Seventh Circuit didn't have that PII limitation, and neither did Judge Blomkast's partial dissent in the Sixth Circuit. So you're disagreeing with Judge Easterbrook and Judge Blomkast. Is that right? I don't disagree with Judge Easterbrook or Judge Blomkast because I don't think they needed to address that limiting point. They reached their opinion. Well, let me start with Judge Easterbrook. But you agree they don't have that Second Circuit limitation in PII, correct? I don't agree. I agree that Judge Easterbrook doesn't discuss the limitation of the video qualifier in the definition of PII in his opinion. Judge Blomkast in her dissent, I think, does discuss that limitation in response to the majority's opinion. I think for Judge Easterbrook, he reached his conclusion by simply reading the plain language as it would have been interpreted in 1988. And the statute is defined to include goods or services from a videotaped service provider without qualifier. But you agree that his opinion doesn't have a limiting principle. As Judge Beatty is asking you, what is the limiting principle? You would agree his does not contain one. Is that right? I would agree that his opinion doesn't discuss the limiting principles that are within the statute. But I think his opinion recognizes that besides the specific issue that he's analyzing in his opinion, the consumer definition, there are other limiting principles in the statute. And those include not just the definition of personally identifiable information, but also the definition of videotaped service provider. So liability only attaches if a certain number of conditions are met. First, the person has to be a consumer. That's not a given. In the 11th Circuit, somebody who downloaded a free app was found not to be a  That's step one. Second, the defendant has to be a videotaped service provider. They have to be engaged in the business of providing prerecorded videotapes or similar audiovisual materials. That's not a given either. The 9th Circuit hosts video content on its website, but arguably would not be a videotaped service provider. But it's not just providing videotaped services. The company could provide both. It could provide something else, right? I 100% agree. The company could provide more things than video materials. And I think that's also clear from the legislative history. The example that's cited frequently and that is in the Senate report is that Congress envisioned a department store as potentially qualifying as a videotaped service provider, even though the department store sells items other than videos. So legislative history has fallen into some disfavor because it can be manufactured after the fact. And it doesn't really tell us why any particular member of Congress voted for the legislation or why the President signed it. So we're really looking for intent. And you are going to legislative history to suggest that the word including is meant in a limiting way instead of a broad way. What do you have besides legislative history? I think you need something more compelling than sort of questionable legislative history. Well, I would argue that this appeal can be resolved without reference to the legislative history at all because the plain text is unambiguous and it doesn't lead to absurd results. And when that's the case, both this Court and the Supreme Court have said the plain text controls. The first principle of statutory interpretation is that Congress said what it meant. And here we have a provision that unambiguously defines consumers without a video limitation. Congress knew how to insert a video limitation when it wanted to, and it did that in other subsections within the same Section 2710A. But it specifically chose not to include the video limitation in the definition of consumer. And that makes sense within the context of the VPPA because the purpose of the VPPA is to protect a consumer's video privacy choices. And as in the example of the legislative history, whether, you know, regardless of its weight in this appeal, we have the example of a department store. And so in that situation, you can have somebody who's a consumer of goods other than video goods from the consumer, from the department store, and would qualify as a videotape service provider. A different example might be helpful. In 1988, a lot of people, I think, shopped through mail order catalogs. So somebody could subscribe to a Sears catalog by going to Sears and providing Sears with their mailing address. They would then become a subscriber, and Sears would periodically send them a catalog. Sears sells a variety of goods, including videotapes. If the subscriber called Sears and says, do you have a video called Living with Diabetes, that subscriber has now requested specific video materials under the definition of personally identifiable information. But under the district court's interpretation and under Healthline's interpretation, Sears could freely disclose that person's video choices because that person didn't purchase, rent, or subscribe to a video-related good or service. That's an anomalous result. And that's inconsistent with Congress's intent in passing a statute that was designed to be protective of the privacy choices of American consumers. So let me understand. So you're saying the newsletter itself would not qualify as a good or service in the definition of consumer because it has to be a video item based on the definition of PII. Is that what you're saying for liability? It would be limited to only the acquisition of a video. Is that correct? If I understand your question correctly, my argument is that subscribing to the newsletter would qualify a person as a consumer, but that's not enough for that person. If the newsletter has no video-related content, that's not enough for that person to then be within the potential of a plaintiff who has a case against Healthline. Because the ultimate good or service is not a video one. Is that correct? And you're getting that in through the PII. I'm just trying to understand your theory. Basically, it sounds like you're just following the Second Circuit. Is that right? I do follow the Second Circuit. I follow the Seventh as well. But you already conceded the Seventh doesn't have any explicit limitations. What my concession is is that Judge Easterbrook doesn't specifically discuss in his opinion PII as a limiting factor because he doesn't need to. But I am 100 percent in agreement with his interpretation of the statute, which is that — But that interpretation would be without limitation, though, going back to the point Judge Beatty made. His interpretation of goods or services is without limitation, although, as I noted, there's still some limitation because, as the Eleventh Circuit held, downloading a free app would not qualify as subscribing to goods or services. But Judge Easterbrook's interpretation focused solely on the definition of consumer is without limitation as to those terms, goods or services. So does the consumer have to have a special relationship with the videotaped service provider, such as having exclusive access versus just access to something that's publicly available? I think the relationship is only special to the extent that the consumer purchases, rents, or subscribes to goods or services. I think exclusive access is not required and would be taking a step too far. It would be a bad policy to require exclusive access to video content because you can envision a provider like YouTube who provides free video content to the essentially evade liability in any circumstances because YouTube could say, well, our content is available to everybody. Nobody gets exclusive access. So we would never be liable for violating the VPPA. So in response to Judge Koh's question about the newsletter, are you walking away from the argument in your brief that the newsletter and the DESI membership were sufficient to bring your client's claims within the statute? I thought your argument was that they were sufficiently similar to audiovisual materials because they included curated links to videos. I'm not walking away from that argument. In the alternative, if the court finds that the consumer definition, like the district court found, does require a video connection, then I am continuing to argue that our clients did subscribe to a video-related good or service. But what we would have is one of them receives a newsletter and there are links and they may or may not click on those links. So how does that become PII that is protected and that is improperly disclosed? The PII would be any video that the consumer interacts with. So the newsletter – So they have to go beyond the newsletter. They have to click on the link. Well, the newsletter makes it very easy for them because it says click this link and you get directly to a video. It's like logging onto your Netflix and you click a link in order to watch a video. So it's teed up, and that's the video-related benefit that we argue of the newsletter, which is that it provides these curated links for the consumer to easily ask video content that's tailored to their specific interests. So then your argument is that this newsletter, if we were to adopt the limitation that consumer means a consumer of audiovisual goods and services, you think this newsletter now qualifies as an audiovisual good? We do. We argue that in the court below, and for the reasons I said, because the newsletter provides curated access to personalized links to video content, we would argue that it's an audiovisual good or service. And I see I'm out of time. I have one more question. We've previously held that personal identifying information is only information that would allow an ordinary person to identify a particular individual as having watched a certain video. Would an ordinary person be able to make that identification based just on a Facebook ID? Yes, Your Honor, I think they would. And in the Eichenberger decision where this court held that, the court noted that a Facebook link very well could qualify as identifying information under the statute. And the Facebook ID that we've alleged here is essentially the same thing as a Facebook link. It directs somebody immediately to a person's Facebook profile, which includes an entire trove. But what's the mechanism for that to happen? The mechanism would be facebook.com slash the numbers that are included in the Facebook ID. All right. Thank you, Counsel. We'll give you a couple of minutes for rebuttal. Thank you. Good morning, Counsel. Good morning, Your Honors. Ben Thomason here for Defendant Healthline Media, Inc. and may it please the Court. Your Honors, when this Court first encountered the Video Privacy Protection Act in 2015 in the Mullet v. Netflix appeal, this Court recognized that Congress's stated purpose for the act was to preserve the personal privacy with respect to the rental, sale, and delivery of videotapes and similar audiovisual materials. Your Honors, that recognition should drive the decision in this appeal today. Under the plain text of the VPPA, the same video transactions that qualify an individual as a statutory consumer are the same video transactions that generate the personally identifiable information that's protected by the act and are the same video transactions that qualify an entity as a regulated videotape service provider. In this case, because neither plaintiff alleges that she rented, bought, or subscribed to video materials from Healthline, they are not statutory consumers under the act and they cannot state a VPPA claim as a matter of law. So it's your statutory purpose argument, your strongest argument? Not at all, Your Honor. Is that the one you're making? I'm sorry, I'm trying to understand. Are you making a statutory purpose argument? Because that one seems like it's not necessarily in your favor when it's exactly the ID of an individual and what videos that individual watched that's being conveyed by your client to Facebook. Yes, I understand. Let me wind up to what should be the argument here. That seems almost completely on point with statutory purpose of what information the statute was intended to protect. Right, so the purpose of the statute that was recognized in Mullet and recognized Judge Rollinson in the Sonny v. Rodriguez decision that you authored, it's to protect these video transactions. The transactions are at the heart of what is at issue in this case, as to each of the VPPA's core definitional terms. Right? And so the ultimate support for our argument comes from the statutory text, as this Court stated in, for example, the Rodriguez case, must be read to create a consistent regulatory regime in line with that congressional purpose. And it's only when we use canons of construction that bring us outside that framework do we start to run astray. And that's the main issue with the Second Circuit's interpretation of the VPPA today. So Healthline's argument in this case is based on a holistic reading of all the VPPA's key statutory terms, Section A-1, Section A-3, and Section A-4, in light of the liability provision in Section B-1. So the canons of construction also require that we assume when Congress used different language, they meant different things. And in the different sections, the word video or audiovisual is included or excluded, and it's excluded in the definition of the consumer. So why should we conclude that that was not deliberate, that it was an omission, a Scrivener's error, or something else as a way for us to write those words into the statute? Sure. Well, Judge Bate, the answer comes in the VPA's text. And again, this consistent focus on protecting these video transactions first and foremost, and this meaningful variation canon, that's the one that really underlies the Second Circuit's decision in the — the Second Circuit's decision in Salazar v. NBA. And one thing counsel noted at the outset of his argument is that two circuit courts weighed in his favor and only one has gone the opposite direction. Well, just this morning, the D.C. Circuit issued its opinion in the Pelleggi case, which addressed the same issue of statutory interpretation. And they addressed directly the question Your Honor is asking. Well, what about this meaningful variation canon? And in finding that the consumer in that case, which was also an individual that just received a written newsletter, the D.C. Circuit warned that these interpretive tools are just that, they're tools to aid in the court's interpretation of a statute's plain language. But when their application starts taking the statute in directions that Congress did not anticipate and are misaligned with congressional purpose, then the court shouldn't dogmatically rely on them. And again, to bring this back to this Court's decisions, again, in the Sony v. Rodriguez case, this happened as well. It wasn't a meaningful variation canon, but it also dealt with the fact that the VPPA, as Judge Rawlinson wrote, is an imperfectly drafted statute. And we have to rely on this holistic reading to understand what Congress meant. In that case, the plaintiffs argued that the civil action provision of the VPPA says literally that a consumer can sue if he or she is aggrieved based on any violation of this section. Right? And the argument went in that case, well, part of the section, Section 2710 of the VPPA, includes the destruction of records provision. So I should be able to bring a lawsuit when someone holds my records for too long. This court rejected that articulation, even though it is supported by the literal text of the civil action provision when you look at that word in isolation, because what it looked to was the structure of the act and the fact that it maintains this focus on protecting against the disclosure of personally identifiable information rather than the other elements of the act that someone could conceivably bring a cause of action under. And so the court departed from the literal meaning of the text, and in that case followed the Seventh Circuit in agreeing that a holistic reading of the statute is required when addressing the VPPA in particular. And the variations in the statute aren't just limited to this presence of video in Sections A3 and A4, but not A1. There's plenty of other ---- a particular individual as having watched a certain video, correct? That's generally what is alleged here, but that does not matter for the purposes of the VPPA, because, again, the statute is focused on protecting the transactions that statutory consumers have with respect to the video products offered by videotaped service providers. It focuses ---- Kagan, it's focused on protecting the transactions. So when this all started with Judge Bork's list of videos rented from Blockbuster, I don't think anybody was concerned of whether he paid $5 or $7 to rent the video. It was the content. It was the ---- that was what was offensive. That was what led to the enactment of this legislation was such a gross invasion of somebody's privacy. So I don't think that Congress cared about the transactions here. They cared about the information. And so what is monetized by your clients is the information. And so however they induce somebody to give them that information doesn't seem to be relevant with respect to what Congress was trying to stop. So here you sign up for a newsletter, and then when you do that and watch videos, Healthline acquires information it can sell. So if it were something else, you purchase supplements, and because you purchase that, you get access to lists of videos that other people could access, too, but now we're going to send you ones we think you're going to like. And once you do that, then we sell that information. Why doesn't that fall within the purpose of the statute in the plain language of the statute? Sure. And I understand Your Honor's point completely. And when I say transaction, I don't mean protecting the fact that someone paid $5 for a video rental. And this goes directly to your question, Judge Koh, about where the limitations of the statute come in. Right? So Congress wasn't interested in protecting the dollar value associated with a rental subscription or purchase, right? They were, as the statutory purpose says, as the title to the VPPA says, and the title of the liability provision, which Judge Koh came up in the argument in the Silver Cinema case. Right. I mean, I guess this is the problem. If you look at A1, you're asking us to read in audiovisual before the phrase goods or services, and it's just not there. That is the argument. Right? You are asking us to read that in, that qualifier, but it's not in the text. Yeah. You agree it's not in the text, correct? Of course I agree it's not in the text. Right. So you're asking us to read in words that Congress chose not to include in A1. Not at all. Because the context of Section A1 in the statute, the definition of consumer, has to be read within its place, within the regulatory scheme that Congress envisioned here. And that is where, again, to go back to your questioning of counsel for plaintiff in this matter, Judge Koh, that's where the limits of the VPPA come in. It focuses specifically on protecting, not the transactions, but the privacy associated with things like video rentals. Right? That is what led to the enactment of the VPPA in the first place. Judge Bork went to a local video store. He engaged the rental transaction, and what was disclosed was the identifiable information. Let me ask you about your defense on the PPPI and liability. It seems like your only defense on that point is that you didn't knowingly disclose the information based on your brief. Is that correct? This is the... I'm talking about B1 liability. From your briefing, the only defense that I could discern is that you are contesting that you didn't knowingly disclose the PPPI. Is that correct? Well, so I don't think it's quite correct because...  Tell me what other word or phrase in B1 you are disputing other than knowingly. Well, it's consumer. And it's the question, the alternative argument... Okay. Understanding you're challenging consumer. Yes. Other than consumer and knowingly, what else are you challenging for your liability defense in B1? Well, I think the issue I'm having with the way you're putting it, Your Honor, is how that term knowingly is addressed in our brief, right? So assume I disagree with you on consumer. Yes. What other defense do you have to liability under B1 other than the word knowingly disclose? Right. Well, so the full scope of that defense under the knowingly term, and this is what I do want to emphasize, is that it must apply both to the statutory PII and the term consumer. And this, again, goes back to the limitation issue that the panel was discussing with counsel for plaintiff here. Okay. Let me ask you. If Healthline intentionally installed Metapixel on Healthline's website to share Facebook IDs and the videos watched with Meta, tell me how that's not knowingly disclosing the PII? I think your questions, again, going back to your discussion with... No, I'm not going back to that. I want you to answer my question that I'm asking right now. Yes, and I'm trying to answer it by referencing this discussion, right? Okay. So the installation of software on our website is not enough because, as this Court recognized in the Eichenberger case, the VPPA is a — has a disclosing party focus, right? And this is part of that term knowingly in Section B1. It looks to what the videotaped service provider can know about the information it has in hand and about whether it knows that it needs to be protected under the VPPA. In Eichenberger, the discussion focused on that term personally identifiable information, and the Court adopted the ordinary person standard because when it comes to knowing disclosures, a videotaped service provider using that ordinary person standard has everything it needs to figure out whether this piece of information implicates the statute. Now, once we apply that knowing element to the consumer part of Section B1, if we adopt the Second Circuit's articulation of the statute, the broader definition of goods or services in Section A1, and an entity like Healthline is dealing with individuals that come and view free video content on the website, content that no one can rent, buy, or subscribe to, it has no way of knowing with respect to that video interaction whether or not the person — But does that matter here when you have subscribers? That argument doesn't matter here when you have subscribers, right? You're just saying someone off the street accessing public videos without actually registering an account on Healthline. But that's not the situation here. So let's talk about the situation here. You have two subscribers. Right. Okay? And it sounds like from what you've said, it still all hinges on knowingly. Right. And so this is my point — They have no other defense other than knowingly. I didn't think they were consumers. I didn't think this was PII because they're not consumers. That is the defense, right? That's the gist of it. But the knowing element comes into play here even though these two plaintiffs are subscribers to newsletters or the Bezzy website, right? When they visit the Healthline website for the first time, they are situated exactly the same as someone visiting the website for the first time. And from the perspective of the videotaped service provider, which again this court says is the focus of the statute — So you're saying sometimes Healthline might violate with regard to subscribers, but sometimes they don't when it's not a subscriber. And because I don't know who this Facebook ID that I'm giving to Meta is, that's my defense because I'm not doing it knowingly. Right. I mean — That's the defense, right? I would say that there is no violation without that knowing element, which is a necessary part of the statute. But do you agree when they're subscribers, subscribers you're giving the Facebook ID to Meta with an identification of what videos the subscriber of your website is viewing? I think you would have liability there in the case of something like Netflix, where if a videotaped service provider knows that I only provide exclusive or enhanced access to specific video content, then I know — Okay. Where is that — You want to make a textual argument on that? Tell me where exclusive access is in here. I know that Judge Donato read that into his order. But where is that in the statute? It just — It comes in with the definition of the term subscriber, right? And this hearkens back to the — Right. But you have subscribers here. I guess I'm really unclear. If you have Healthline subscribers, you're saying they don't have — they don't get any benefit from being a subscriber to your website? My time is up, but just if I can answer your question. Please answer. Yes. So the answer is yes. Judge Donato answered this as well. Yes, they are subscribers. He didn't cite anything. That was a conclusion in the last sentence of that decision. He didn't cite anything for that. But — Persistent, right? He just says it bears mention that the SAC, like its predecessors, does not plausibly allege that newsletter subscribers had access to Healthline videos not available to non-subscribers or other special content reserved for subscribers, period. No citation. No authority. No analysis. Right. Counsel, were you going to answer? I was, if I may. Yes. Yes, I know I'm going over — Yes, that's fine. We're taking you there, so that's fine. Okay. Thank you. I appreciate it, Judge Rawlinson. So the answer here is that, yes, they are subscribers, but they are not subscribers as that term is used in the Video Privacy Protection Act because they don't have any allegations that tie that subscription to any video goods or services offered by Healthline. And as — That's the question I was going to ask you. Is it your argument that they are subscribers to the newsletter and not subscribers to the videos? Absolutely. And that is consistent with the Sixth Circuit's articulation of the term consumer in the statute in the Salazar v. Paramount case. That is the specific conclusion that was reached by the D.C. Circuit just this morning in the Pelleggi case. And it's the argument that we put forward here today. Just because these individuals subscribe to something does not mean that they are subscribers as that term is used in the Video Privacy Protection Act in Section A1. And that means they are not statutory consumers. All right. Thank you, counsel. Thank you, Your Honors. Two minutes for rebuttal. Thank you, Your Honor. Let me first start by addressing the last point that counsel for Healthline made. Beginning with the Pelleggi decision, it just came down this morning. I haven't had a chance to study it. And I understand that there's a distinction of the meaningful variation canon. But I think that the core principle here is that when the plaintext controls — when the plaintext is unambiguous, it controls. And I would return to what Judge Easterbrook said from the Seventh Circuit, which is he reads the definition of consumer. It does not say subscriber of video services. It says subscriber of services from a videotape service provider. But, counsel, the fact that we have different courts interpreting this language a different way, doesn't that kind of militate against the fact that the plaintext reading is the only way to analyze the statute? I think it does emphasize that the plaintext is the right way to read the statute. And as Judge Koh just said, we would be reading terms into the statute, which is impermissible both under this court's president and under the Supreme Court's president. Well, how do you explain the varying interpretations from different courts? I think there's always room for argument when it comes to lawyers. And there's always room for interpretation in any statutory text. But when I think about not just whether the plaintext is controlling, I start with whether the plaintext leads to absurd results. That's what the Supreme Court has instructed. And here it would not lead to any absurd results to read the statute as Congress wrote it. Counsel for Healthline also noticed that there should be a focus on the transaction relating to videos. That doesn't make sense. And that appears nowhere in the act. Well, it is a video Privacy Protection Act. And that's the difficulty. When this statute was enacted, it was a different time when we didn't have the online access and links that we could click on. It was a straightforward transaction. So we're trying to interpret a statute that was enacted before these types of access were available. And that's the difficulty with trying to parse the language in such a way that it keeps the meaning of the statute but also is applied to transactions that were not in the contemplation of Congress when they made the statute. That's the difficulty I'm having with this case. If I may briefly respond? Yes, please. When the VPPA was enacted, Congress was specifically concerned with the advancements of technology and that impact on consumer privacy. So this statute was written with advancements in technology in mind. That's why it doesn't just refer to prerecorded videocassette tapes. It also refers to similar audiovisual material. And then Congress looked at the statute again in 2012. And that's deeply within the era of streaming video content and the Internet era. That was contemplating like a Netflix where you get that, but not where you go to one concrete item and then link to a different item. That's a little bit different. But I think the purpose behind the statute is that the consumer transaction provides the videotape service provider with the information that would allow it to identify a person and link that person with their video content. But there's nothing in the act that says that that has to come to the videotape service provider in the same transaction. But then we go back to the point where where is the limit to that? It's almost like a limitless liability. And I don't think that Congress contemplated that. I don't think so, because there's limitations in the definition of consumer, in the definition of videotape service provider. The disclosure has to be knowing, which is always a hard standard. And importantly, a videotape service provider can obtain consent. And in 2012, when Congress looked at the statute in light of technological advancements, they made it easier for videotape service providers to obtain consent by saying you can do that electronically and you can obtain the consent on an ongoing basis. It's very common on the Internet to go to a website and see a banner or a pop-up that says, we collect so-and-so information. Do you agree? Do you not? And Congress made that possible for the VPPA in part to limit liability. Can I ask one more question? Are you suggesting that, I think they call it shrink-wrap, you know, the sort of passive agreement that that's sufficient under the VPPA? Well, I think the scenario that I'm envisioning is more like a click-wrap agreement, which almost uniformly has been upheld to be enforceable, particularly in the Internet. And we were thinking about a website like Healthline. You could have a pop-up that requires somebody to click I accept, and that would fall into that click-wrap bucket, which has been upheld as enforceable. All right, thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BADE, KOH